IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**JASON DONALD SIMPSON, A.K.A.**
**JASON DONALD SIMPSON, SR.,**
*Petitioner,*

*v.*

**HONORABLE PHEMONIA MILLER, JUDGE PRO TEMPORE OF THE SUPERIOR**
**COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Commissioner,*

**STATE OF ARIZONA,**
*Real Party in Interest.*

---

**JOE PAUL MARTINEZ,**
*Petitioner,*

*v.*

**HONORABLE ROLAND J. STEINLE, JUDGE OF THE SUPERIOR COURT OF THE**
**STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**STATE OF ARIZONA,**
*Real Party in Interest.*

---

No. CR-16-0227-PR
Filed February 9, 2017

---

Special Actions from the Superior Court in Maricopa County
The Honorable Phemonia Miller, Judge Pro Tempore
The Honorable Roland J. Steinle, Judge

Nos. CR2015-0134762; CR2014-118356,

**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
240 Ariz. 208, 377 P.3d 1003 (App. 2016)
**VACATED**

_____

COUNSEL:

William G. Montgomery, Maricopa County Attorney, David R. Cole (argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

Woodrow C. Thompson, Hannah H. Porter, Katherine E. Hollist, Gallagher & Kennedy, P.A., Phoenix; Hector J. Diaz, Andrea S. Tazioli, Quarles & Brady, LLP, Phoenix, Attorneys for Jason Donald Simpson

Jean-Jacques Cabou (argued), Alexis E. Danneman, Sarah R. Gonski, Perkins Coie, LLP, Phoenix; Brian F. Russo, Law Offices of Brian F. Russo, Phoenix, Attorneys for Joe Paul Martinez

Mark Brnovich, Arizona Attorney General, Eryn M. McCarthy, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Superior Court in Maricopa County

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Rusty D. Crandell, Assistant Attorney General, Michael G. Bailey (argued), Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General; Robert L. Ellman, General Counsel, House of Representatives, Phoenix, Attorney for Amicus Curiae Speaker of Arizona House of Representatives; and Greg Jernigan, General Counsel, Arizona State Senate, Phoenix, Attorney for Amicus Curiae President of Arizona Senate

Kathleen E. Brody, American Civil Liberties Union Foundation of Arizona, Phoenix; Andrea Woods, Ezekiel Edwards, American Civil Liberties Union Foundation, Criminal Law Reform Project, New York, NY, Attorneys for American Civil Liberties Union and American Civil Liberties Union of Arizona; and Anne Chapman, Mitchell Stein Carey, PC, Phoenix, Attorneys for Amicus Curiae National Association of Criminal Defense Lawyers

Mikel P. Steinfeld, Maricopa County Public Defender's Office, Phoenix, and David J. Euchner, Pima County Public Defender's Office, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice, et al.

Colleen Clase, Jessica Gattuso, Eric Aiken, Scottsdale, Arizona Voice for Crime Victims; Jamie Balson, Arizona Coalition to End Sexual & Domestic Violence, Phoenix, Attorneys for D.D. and D.L.

———————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1 Arizona's Constitution and laws forbid bail for defendants accused of sexual conduct with a minor under age fifteen when the proof is evident or the presumption great that the defendant committed the crime. Because that prohibition is not narrowly focused to protect public safety, we hold that it violates the Fourteenth Amendment's due process guarantee.

**I.**

¶2 Article 2, section 22(A) of the Arizona Constitution's Declaration of Rights provides in part:

> All persons charged with crime shall be bailable
> by sufficient sureties, except:
>
> 1. For capital offenses, sexual assault, sexual conduct with a minor under fifteen years of age or molestation of a child under fifteen years of age when the proof is evident or the presumption great.

¶3 The crimes of sexual assault, sexual conduct with a minor under age fifteen, and molestation of a child under age fifteen were added to capital offenses under section (A)(1) by the voters through Proposition 103 in 2002. The legislature codified the provisions of section (A)(1) in A.R.S. § 13-3961(A)(2)–(4).

¶4 The State charged Joe Paul Martinez with multiple sexual offenses, including sexual conduct with a minor under age fifteen, a class 2

felony under A.R.S. § 13-1405(B) and a dangerous crime against children under A.R.S. § 13-705(P)(1)(e). (After we granted review, Jason Donald Simpson accepted a plea agreement, making his case moot. We therefore focus on Martinez's case.) Martinez filed a petition to be released on bail. The trial court conducted an evidentiary hearing and concluded that the proof was evident or presumption great that Martinez committed sexual conduct with a minor under age fifteen, thus rendering him ineligible for bail pursuant to A.R.S. § 13-3961(A)(3). He has been held in custody without bail since April 2014.

¶5        Martinez unsuccessfully challenged the facial constitutionality of § 13-3961(A)(3) and the corresponding provision of the Arizona Constitution, article 2, section 22(A)(1). Accepting special action jurisdiction and granting relief, the court of appeals, by a 2-1 vote, reversed, holding the provisions unconstitutional because an individualized determination of dangerousness is necessary to withhold bail. *Simpson v. Miller*, 240 Ariz. 208, 215 ¶ 22, 377 P.3d 1003, 1010 (App. 2016).

¶6        We granted review because the constitutional issue presented is one of first impression and statewide importance. *See Brewer v. Burns*, 222 Ariz. 234, 237 ¶ 8, 213 P.3d 671, 674 (2009). We have jurisdiction pursuant to article 6, section 5 of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶7        This case presents questions of law, which we review de novo. *US West Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 244 ¶ 7, 34 P.3d 351, 353 (2001). In a facial constitutional challenge, the party challenging the law must establish that it "is unconstitutional in all of its applications," a standard the United States Supreme Court characterizes as "exacting." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2451 (2015).

¶8        Reviewing a state constitutional provision under the United States Constitution requires great care. In our federalist system of dual sovereignty, states retain certain antecedent powers, including the power to protect their citizens from crime. *See, e.g.*, *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870–71 (2016); *Gonzales v. Raich*, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting) ("The States' core police powers have always included authority to define criminal law and to protect the health, safety, and welfare of their citizens."). In that system, state constitutions are our basic charters of state governance. *See* John D. Leshy, *The Making of the Arizona Constitution*, 20 Ariz. St. L.J. 1, 4–5 (1988). Consequently, we strive whenever possible to uphold their provisions. Where the national and state

4

constitutions conflict irreconcilably, however, the latter must yield under the Supremacy Clause. U.S. Const. art. VI, cl. 2; *see also* Ariz. Const. art. 2, § 3.

¶9      In this case, state interests of the highest order, advanced through article 2, section 22(A)(1), collide with the fundamental due process right to be free from bodily restraint. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Rasmussen by Mitchell v. Fleming*, 154 Ariz. 207, 215–16, 741 P.2d 674, 682–83 (1987) (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). Thus, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). At the same time, the United States Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748.

¶10      Freedom from pretrial detention absent extraordinary circumstances traces to the common law, where the general rule was against pretrial incarceration and in favor of bail, except for capital crimes—an exception grounded in the belief that defendants in such cases would flee to save their lives. *Simpson v. Owens*, 207 Ariz. 261, 267 ¶ 18, 85 P.3d 478, 484 (App. 2004). At common law, there were two hundred capital crimes, which were reduced to twenty in the American colonies. *Id.* at 268 ¶ 19, 85 P.3d at 485. For capital defendants, bail could be denied "where the proof is evident or the presumption great" that the defendant committed the charged offense—language echoed in article 2, section 22(A) of the Arizona Constitution.

¶11      The right to bail in non-capital cases is rooted in American and Arizona law:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), . . . federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and

> serves to prevent the infliction of punishment
> prior to conviction.

*Stack v. Boyle*, 342 U.S. 1, 4 (1951) (citing *Hudson v. Parker*, 156 U.S. 277, 285 (1895)).  The Eighth Amendment and article 2, section 15 of the Arizona Constitution also prohibit "excessive bail."  And of course article 2, section 22(A) recognizes a right to bail subject to specified exceptions.

¶12        However, the right to bail does not arise from the Eighth Amendment itself.  The Eighth Amendment derives from the English Bill of Rights Act, which "has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail."  *Carlson v. Landon*, 342 U.S. 524, 545 (1952).

¶13        Thus, the "Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country."  *Id.*; *see also Salerno*, 481 U.S. at 752 (noting that the Eighth Amendment "says nothing about whether bail shall be available at all"), 754–55 ("[W]hen Congress has mandated detention on the basis of a compelling interest other than prevention of flight, . . . the Eighth Amendment does not require release on bail."); *accord State ex rel. Romley v. Rayes*, 206 Ariz. 58, 62 ¶ 12, 75 P.3d 148, 152 (App. 2003) (holding that Proposition 103 does not violate the Eighth Amendment).  Rather, due process requires that pretrial detention may be used only for regulatory rather than punitive purposes.  *See Salerno*, 481 U.S. at 747–48.

¶14        In *Salerno*, the Court upheld the Bail Reform Act of 1984 against a substantive due process challenge.  481 U.S. at 747.  The law allowed courts to deny bail for serious crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, and certain repeat offenders.  *Id.*  In addition to showing probable cause that the defendant committed the crime, the government also was required to prove by clear and convincing evidence in a "full-blown adversary hearing" that "no conditions of release can reasonably assure the safety of the community or any person."  *Id.* at 750.  "Given the legitimate and compelling regulatory purpose of the Act" to prevent future crime by defendants who have committed serious offenses, plus "the procedural protections it offers," the Court concluded that the law was not facially invalid under the Due Process Clause.  *Id.* at 752.  *Salerno* provides the framework with which we assess the constitutionality of article 2, section 22(A)(1) and A.R.S. § 13-3961(A)(3).

**III.**

¶15     The bail provisions enacted through Proposition 103 are similar in some respects to those upheld in *Salerno*. Like the Bail Reform Act, they are limited to specific serious crimes, they are intended to protect public safety by preventing defendants from committing future crimes, and they require a full-blown adversarial hearing. But unlike the hearing in *Salerno* to determine that a defendant posed a danger to specific individuals or the community at large, the hearing at issue here determines only "if the proof is evident or the presumption great" that the person committed the offense charged. It does not consider whether the defendant poses a danger to others.

¶16     The "proof evident or presumption great" standard is robust. In *Simpson v. Owens*, our court of appeals held that the state's burden "is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding . . . [and] dispassionate judgment of the court that the accused committed one of the offenses enumerated in A.R.S. § 13-3961(A)." 207 Ariz. at 274 ¶ 40, 85 P.3d at 491 (adding that the "proof must be substantial, but it need not rise to proof beyond a reasonable doubt"). The court stated that "the hearing should take place as soon as is practicable to ensure that the accused is afforded due process and to maintain the presumption of innocence." *Id.* at 278 ¶ 55, 85 P.3d at 495. At the hearing, the defendant is entitled to counsel and can cross-examine witnesses. *Id.* at 275–76 ¶ 44, 85 P.3d at 492–93. The trial court must determine with specific factual findings that the proof is evident or the presumption is great. *Id.*

¶17     In *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 775 (9th Cir. 2014), the Ninth Circuit sitting en banc struck down article 2, section 22(A)(4) and A.R.S. § 13-3961(A)(5), which forbade bail for illegal immigrants who were found to have committed certain serious felony offenses "if the proof is evident or the presumption great" that the defendant committed the specified crime. The court applied a "heightened scrutiny" standard derived from *Salerno*. *Id.* at 779–80. Construing *Salerno* to apply a three-part test, the court concluded that the challenged provisions "do not address an established 'particularly acute problem,' are not limited to 'a specific category of extremely serious offenses,' and do not afford the individualized determination of flight risk or dangerousness that *Salerno* deemed essential." *Id.* at 791. It thus concluded that the laws "are not narrowly tailored to serve a compelling interest." *Id.*

¶18     In this case, the court of appeals also concluded that all three *Salerno* factors are necessary to uphold a bail restriction. *Simpson*, 240 Ariz. at 211 ¶ 13, 377 P.3d at 1006 ("*Salerno* did not even suggest that fewer than all of the safeguards in the Bail Reform Act might be allowable."). The court

found that the challenged provisions violated *Salerno*'s third prong because they require a court "to turn a blind eye to the individual facts and automatically deny bail in *every* case based on proof of likely guilt." *Id.* at 212 ¶ 14, 377 P.3d at 1007. Thus, the majority concluded "that the absence of the third *Salerno* factor is constitutionally fatal." *Id.* ¶ 15.

¶19 The dissenting judge found that categorical bans on bail have not been limited to murder or other capital crimes, *id.* at 217–18 ¶¶ 34–36, 377 P.3d at 1012–13 (Gould, J., dissenting); that "Arizona's offense-based procedure" thus "falls within a well-established framework that has been used throughout the United States for many years," *id.* at 218 ¶ 37, 377 P.3d at 1013; and that *Salerno* did not impose a rigid three-part test but rather "simply held that the Act's procedures 'suffice to repel a facial [constitutional] challenge.'" *Id.* ¶ 39. As a result, according to the dissent, "we cannot even say that Arizona's no bond provisions are unconstitutional as to one of the actual litigants before us, much less unconstitutional in every conceivable application." *Id.* at 220 ¶ 48, 337 P.3d at 1015.

¶20 As a threshold matter, we conclude that the challenged provisions are regulatory, not punitive, and therefore do not constitute a per se due process violation. As with the Bail Reform Act in *Salerno*, 481 U.S. at 747, nothing surrounding Proposition 103's adoption indicates that the pretrial detention provisions were formulated to punish criminal defendants. All ballot arguments supporting Proposition 103 focused on protecting public safety by preventing additional crimes. *See* Ariz. Sec'y of State, 2002 Publicity Pamphlet 16–17 (2002), *available at* http://apps.azsos.gov/election/2002/Info/pubpamphlet/english/prop1 03.pdf. "There is no doubt that preventing danger to the community is a legitimate regulatory goal." *Salerno*, 481 U.S. at 747.

¶21 We disagree with both the Ninth Circuit in *Lopez-Valenzuela* and the court of appeals majority here that the three factors set forth in *Salerno* are due process prerequisites for offense-specific pretrial detention procedures. Rather, they were indicia reflecting the constitutionality of the statute at issue in *Salerno*. *See State v. Furgal*, 13 A.3d 272, 278–79 (N.H. 2010) ("The defendant conflates sufficient conditions with necessary ones. We do not read *Salerno* to hold that all statutory bail schemes must include an individualized inquiry into a defendant's dangerousness in order to pass constitutional muster."). Indeed, the Court found that the Bail Reform Act's safeguards "are more exacting" and "far exceed" those found sufficient in other contexts. *Salerno*, 481 U.S. at 752. Rather, it is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme

turns on whether particular procedures satisfy substantive due process standards. *See id.* at 748–49 (listing cases in which pretrial detention was upheld and acknowledging the "general rule" that "the government may not detain a person prior to a judgment of guilt in a criminal trial," but noting that "these cases show a sufficient number of exceptions to the rule that the congressional action challenged here can hardly be characterized as totally novel").

¶22        Some confusion exists over the level of scrutiny courts should apply to mandatory detention laws. The United States Supreme Court has characterized the right to be free from bodily restraint as "fundamental." *See, e.g., Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Ordinarily, infringement of fundamental rights triggers strict scrutiny, which requires that the government demonstrate a compelling interest to which the restriction is narrowly tailored. A challenged law "rarely survives such scrutiny." *Burson v. Freeman*, 504 U.S. 191, 200 (1992) (applying strict scrutiny in voting rights context). But the Court has not consistently applied strict scrutiny to infringement of fundamental rights. *See, e.g., Foucha*, 504 U.S. at 86 (requiring a "particularly convincing reason" for involuntary confinement); *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (utilizing a balancing test between interests of the state and "reasonable conditions of safety and freedom from unreasonable restraints" and determining whether professional judgment was exercised); *see also* Adam Winkler, *Fundamentally Wrong About Fundamental Rights*, 23 Const. Comment. 227, 232 (2006) (observing that "strict scrutiny is only occasionally the applicable standard" in the fundamental rights context).

¶23        We agree with the Ninth Circuit that *Salerno* applied "heightened scrutiny" to the Bail Reform Act. *Lopez-Valenzuela*, 770 F.3d at 780. However, the standard the Ninth Circuit ultimately applied—whether the bail restrictions are "narrowly tailored to serve a compelling interest," *id.* at 791—reflects strict scrutiny, the most exacting constitutional review standard. *See, e.g., Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198, 2221 (2016). *Salerno* did not require this standard. Rather, it described the government's interest as "both legitimate and compelling," and the act's provisions as "narrowly focuse[d] on a particularly acute problem." 481 U.S. at 749–50. Indeed, the Court instructed that "the present statute providing for pretrial detention on the basis of dangerousness must be evaluated in precisely the same manner that we evaluated the laws" in the prior cases it listed, *id.* at 749—none of which appear to have applied strict

scrutiny.[1]  Although the terms "legitimate and compelling" and "narrowly focused" are not clearly defined terms of constitutional art, *Salerno* gives them sufficient substance to guide our analysis.[2]

**¶24**　　　The state's objectives here satisfy the first part of the *Salerno* test because "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling."  481 U.S. at 749.  Likewise, the pretrial detention "operates only on individuals who have been arrested for a specific category of extremely serious offenses."  *Id.* at 750.

**¶25**　　　However, *Salerno* also examined whether the process at issue was narrowly focused on accomplishing the government's objective — in that case (as here) preventing harm.  In *Salerno*, that objective was served by an individualized determination of dangerousness.  As the Court held, "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat."  *Id.* at 751.

**¶26**　　　Although we do not read *Salerno* or other decisions to require such individualized determinations in every case, if the state chooses not to provide such determinations, its procedure "would have to serve as a

---

[1]  *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 105 (1975) (finding judicial determination of probable cause a prerequisite for pretrial detention under the Fourth Amendment); *Jackson v. Indiana*, 406 U.S. 715, 717 (1972) (applying rational basis to conclude that a committed person accused of a criminal offense cannot be held more than a reasonable period of time necessary to determine whether he will attain capacity); *Greenwood v. United States*, 350 U.S. 366, 375 (1956) (finding under Necessary and Proper Clause that civil commitment was acceptable); *Ludecke v. Watkins*, 335 U.S. 160, 161 (1948) (holding President's power to remove enemy aliens judicially unreviewable based on executive power in time of war).

[2]  Decisions subsequent to *Salerno* are context-specific, continuing the Court's case-by-case approach, and do not significantly illuminate the applicable standard.  *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 530 (2003) (upholding pretrial detention policy for deportable criminal aliens without individual determinations of flight risk); *Reno v. Flores*, 507 U.S. 292, 302–03 (1993) (ruling that limited release policies for juvenile alien detainees do not facially violate due process); *Foucha*, 504 U.S. at 83 (ruling that continued commitment of insanity acquittee after conditions of insanity and dangerousness have disappeared violates due process).

convincing proxy for unmanageable flight risk or dangerousness." *Lopez-Valenzuela*, 770 F.3d at 786. Historically, capital offense charges have been considered to present an inherent flight risk sufficient to justify bail denial. *See, e.g.*, *id.* Likewise, certain crimes (or circumstances under which crimes are committed) may present such inherent risk of future dangerousness that bail might appropriately be denied by proof evident or presumption great that the defendant committed the crime. *See Furgal*, 13 A.3d at 279 (discussing long history of denying bail based on evidence of defendant's guilt in serious crimes).

¶27 The crime charged against Martinez, however, is not in itself a proxy for dangerousness. Section 13-1405(A) states, "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." Section 13-1405(B) classifies felonies for sexual conduct with a minor under age fifteen but does not alter the definition of the crime. The crime can be committed by a person of any age, and may be consensual. Hence, as the court of appeals noted, *Simpson*, 240 Ariz. at 215 ¶ 20, 377 P.3d at 1010, the offense sweeps in situations where teenagers engage in consensual sex. In such instances, evident proof or presumption great that the defendant committed the crime would suggest little or nothing about the defendant's danger to anyone. *Cf.* A.R.S. § 13-1406 (defining sexual assault as "intentionally or knowingly engaging in sexual intercourse or oral sexual contact . . . without consent of such person").

¶28 The challenged provisions also are not narrowly focused given alternatives that would serve the state's objective equally well at less cost to individual liberty. Although we do not apply the strict scrutiny standard requiring the state to show the absence of less-restrictive alternatives to satisfy its objective, *see Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 357 (1978) (Brennan, J., concurring in part and dissenting in part), the presence of such alternatives demonstrates that the procedures are not narrowly focused. *See Foucha*, 504 U.S. at 82.

¶29 Because Martinez is charged with a felony, he would be subject to A.R.S. § 13-3961(D), which allows the court to deny bail on the state's motion if the court finds by clear and convincing evidence following a hearing that (1) "the person charged poses a substantial danger to another person or the community," (2) "no condition or combination of conditions of release may be imposed that will reasonably assure the safety of the other person or the community," and (3) "the proof is evident or the presumption great that the person committed the offense." This procedure is essentially the same as the one upheld in *Salerno*. Under this provision, the state may

deploy the entire range of permissible conditions of release to ensure community safety, including GPS monitoring. The court may deny bail altogether for defendants for whom such conditions are inadequate, which may well include many or most defendants accused of sexual conduct with a minor under age fifteen.

¶30 Under our reading of *Salerno*, the state may deny bail categorically for crimes that inherently demonstrate future dangerousness, when the proof is evident or presumption great that the defendant committed the crime. What it may not do, consistent with due process, is deny bail categorically for those accused of crimes that do not inherently predict future dangerousness.

¶31 The State urges that we should not hold the challenged provisions unconstitutional on their face because they may not be unconstitutional in all instances. *See, e.g.*, *Salerno*, 481 U.S. at 751. The State, however, is confusing the constitutionality of detention in specific cases with the requirement that it be imposed in all cases. Sexual conduct with a minor is always a serious crime. In many but not all instances, its commission may indicate a threat of future dangerousness toward the victim or others. But because it is not inherently predictive of future dangerousness, detention requires a case-specific inquiry. Accordingly, we hold that the provisions of article 2, section 22(A) of the Arizona Constitution and A.R.S. § 13-3961(A)(3), categorically denying bail for all persons charged with sexual conduct with a minor, are unconstitutional on their face. Defendants for whom future dangerousness is proved may still be held under A.R.S. § 13-3961(D) as set forth above.

## IV.

¶32 For the foregoing reasons, we reverse the trial court's decision, vacate the court of appeals' opinion, and remand to the trial court for further proceedings consistent with this opinion.