IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**MOHAMED ISMA SAMIUDDIN,**
*Petitioner,*

*v.*

**THE HONORABLE RICHARD NOTHWEHR, COMMISSIONER OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Commissioner,*

**STATE OF ARIZONA,**
*Real Party in Interest.*

_____

No. CR-16-0422-PR
Filed November 2, 2017

_____

Special Action from the Superior Court in Maricopa County
The Honorable Richard Nothwehr, Commissioner
No. CR2016-130296
**VACATED AND REMANDED**

_____

COUNSEL:

James J. Haas, Maricopa County Public Defender, Seth Apfel (argued), Karen Vandergaw, Deputy Public Defenders, Phoenix, Attorneys for Mohamed Isma Samiuddin

William G. Montgomery, Maricopa County Attorney, Amanda M. Parker (argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

_____

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, BOLICK, and GOULD joined.

_____

JUSTICE LOPEZ, opinion of the Court:

¶1        We consider whether Arizona law authorizes Petitioner Mohamed Samiuddin's pretrial release conditions requiring that he reside apart from his family and that he have no unsupervised contact with his minor non-victim children and whether the conditions violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

¶2        We hold that the Arizona Constitution, statutes, and rules authorize the trial court to impose such pretrial release conditions. These conditions, however, must comply with the newly promulgated Arizona Rules of Criminal Procedure 7.2(a) and 7.3(b), which require release conditions to be "the least onerous" that are "reasonable and necessary to protect other persons or the community." Although Samiuddin has a right to be heard, neither Arizona law nor Fourteenth Amendment due process require a trial court to hold an evidentiary hearing to impose or reconsider a pretrial release condition. The trial court, however, must make an individualized determination supported by findings sufficient for appellate review concerning whether the pretrial release conditions are the least onerous measures reasonable and necessary to protect Samiuddin's children.

## BACKGROUND

¶3        Samiuddin was charged with five counts of public sexual indecency to a minor, class five felonies under A.R.S. § 13-1403(B), and two counts of public sexual indecency, class one misdemeanors under A.R.S. § 13-1403(A), after he allegedly stood nude at his apartment window and masturbated in view of the victims, two women and five children, who were walking on the sidewalk. The victims claimed that as they continued walking, Samiuddin ran out of his apartment with a "towel" (a sarong, common attire in Samiuddin's native Rohingyan culture) wrapped around his waist, proclaiming his innocence. Samiuddin denies the allegations, including that he interacted with the victims after his alleged exposure.

¶4        At his arraignment, the trial court found Samiuddin bailable as a matter of right and released him on his own recognizance with several pretrial release conditions, including that he reside apart from his family and that he have no contact with minors under any circumstance. Because Samiuddin claims to live with several of his minor children, he sought to modify the release conditions to allow unsupervised contact with his

children and to permit him to return home.  Samiuddin argued that the conditions were improper for three reasons: (1) the State presented no evidence he harmed or posed a danger to his minor children; (2) his family should remain together because they are recent refugees; and (3) he is likely innocent of the charges.  The trial court, after a hearing, modified the release order to allow Samiuddin to have contact with his children if he "is supervised by a court approved monitor" and pays the costs of supervision.

¶5        The record on review is meager: the trial court's order modifying Samiuddin's release conditions lacks factual findings or justification for the release conditions, although the parties contend the court during the hearing referenced "Form 4," a police probable cause statement that summarizes the offense conduct but does not mention Samiuddin's children; there is no transcript of the hearing; and the recording of the hearing is inaudible due to technical defects.

¶6        Samiuddin argues that Arizona law does not authorize the conditions, but, if it did, the conditions violate his Fourteenth Amendment due process rights.  The court of appeals declined jurisdiction of Samiuddin's special action, but we granted review because he lacks a sufficient remedy by appeal and the standards that apply to pretrial release conditions restricting a parent's access to a minor non-victim child present a recurring issue of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

¶7        We review pretrial release conditions for abuse of discretion, *Gusick v. Boies*, 72 Ariz. 233, 235 (1951), and we interpret statutes, rules, and constitutional provisions de novo.  *Allen v. Sanders*, 240 Ariz. 569, 571 ¶ 9 (2016); *Massey v. Bayless*, 187 Ariz. 72, 73 (1996).  "[T]he words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended."  *State v. Miller*, 100 Ariz. 288, 296 (1966).

### I.       Law Authorizing Pretrial Release Conditions

¶8        The Arizona Constitution provides three grounds for imposing pretrial bail and release conditions: (1) to "assur[e] the appearance of the accused"; (2) to "protect[] against the intimidation of

witnesses"; and (3) to "protect[] the safety of the victim, any other person or the community." Ariz. Const. art. 2, § 22(B). The Arizona Legislature specifies, in A.R.S. § 13-3967, judicial officers' authority to impose bail or release conditions, including discretion to "[p]lace restrictions on the person's travel, *associates* or place of abode during the period of release" or to "[p]rohibit the person from possessing any deadly weapon or *engaging in certain described activities* or indulging in intoxicating liquors or certain drugs." A.R.S. § 13-3967(D)(2), (D)(4) (emphasis added). The Arizona Constitution and statutes, thus, afford trial courts broad discretion to fashion pretrial release conditions concerning defendants' residency, associations, and activities.

**¶9** The Arizona Rules of Criminal Procedure (the "Rules") further elucidate judicial officers' authority to impose pretrial release conditions. Rule 7.2(a) requires defendants' release on their "own recognizance with only the conditions of release required by Rule 7.3(a), unless the court determines, in its discretion, that such a release will not reasonably assure the person's appearance as required or protect other persons or the community from risk posed by the person." If the trial court determines additional conditions are necessary, it "may impose the least onerous condition or conditions contained in Rule 7.3(b) that are reasonable and necessary" to ensure appearance or "to protect other persons or the community." Ariz. R. Crim. P. 7.2(a). Rule 7.3(b), in turn, provides that a trial court may impose specified monetary and non-monetary conditions, including "[a]ny other non-monetary condition that has a reasonable relationship to assuring the safety of other persons or the community from risk posed by the person or securing the person's appearance."[1] The Rules, like A.R.S. § 13-3967, provide judicial officers substantial discretion to fashion pretrial release conditions.

---

[1] We apply the current version of Rule 7.3(b), effective April 3, 2017, to this case. *See State v. Decello*, 113 Ariz. 255, 256–57 (1976) (applying new rule of criminal procedure to pending case where new rule was amended to "make it even more clear").

## II.  Authority to Impose the "No Unsupervised Contact" Pretrial Release Condition

¶10        Samiuddin argues that a trial court may not prohibit pretrial unsupervised contact with his minor non-victim children as a release condition because Arizona law does not expressly authorize it.   We disagree.   We give a statute's words "their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *Miller*, 100 Ariz. at 296.   The Arizona Constitution, statutes, and the Rules, afforded their ordinary meaning, authorize the conditions.

¶11        First, the Arizona Constitution provides that "[p]rotecting the safety of the victim, any other person or the community" is a primary purpose of imposing bail or release conditions.   Ariz. Const. art. 2, § 22(B)(3).   We apply the ordinary meaning of "any other person or the community" to include Samiuddin's minor children.   Second, A.R.S. § 13-3967(D) authorizes the condition; the statute allows judicial officers to "[p]lace restrictions on the person's travel, *associates* or place of abode during the period of release" and to "[p]rohibit the person from possessing any deadly weapon or *engaging in certain described activities* or indulging in intoxicating liquors or certain drugs."   A.R.S. § 13-3967(D)(2), (D)(4) (emphasis added).   "Associates" and "[c]ertain described activities" are sweeping categories, and we are aware of no textual interpretation or legislative history to support categorically excluding, on either ground, restrictions on pretrial contact with minors, including defendants' minor non-victim children.   *See Webster's Second New International Dictionary* 167 (1949) (defining "associate" as "[o]ne often in company with another"); *id.* at 27 (defining "activity" as "[a]n instance of being active, as in an occupation, recreation, or the like").   Third, the Rules permit the conditions because judicial officers have wide discretion to impose non-monetary conditions beyond the required conditions in Rule 7.3(a) to assure the safety of "other persons or the community."   *See* Ariz. R. Crim. P. 7.3(b)(1)(vii). Samiuddin's children, as "other persons," fall under the Rule.   Accordingly, as a threshold matter, judicial officers may prohibit or restrict contact between a defendant and his minor non-victim children if the condition is reasonable and necessary to ensure their safety.

### III.        Due Process and Pretrial Release Conditions

¶12        Samiuddin next contends that, even if Arizona law authorizes the pretrial release conditions, they violate substantive and procedural due process because they impinge his fundamental right to the care, custody, and control of his children without an adequate hearing, and they fail to employ the least restrictive alternative for protecting his children.

¶13        The Fourteenth Amendment provides that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Similar language appears in the Arizona Constitution, which provides that "no person shall be deprived of life, liberty, or property without due process of law." Ariz. Const. art. 2, § 4.[2] "Substantive due process protects an individual from government interference with rights implicit in the concept of ordered liberty," and "[p]rocedural due process guarantees that permissible governmental interference is fairly achieved." *Simpson v. Owens*, 207 Ariz. 261, 267 ¶ 17 (App. 2004) (internal quotation marks omitted).

### A.        Level of Scrutiny

¶14        Samiuddin does not contend that discretionary pretrial release conditions prohibiting or restricting parents' access to their children are, in all instances, unconstitutional. He argues, instead, that we must apply strict scrutiny review to his conditions because his interest in the care, custody, and control of his children is a fundamental right, and the trial court imposed the conditions here without justification.

¶15        The State concedes that parental rights are fundamental but contends we should not apply strict scrutiny because the contested pretrial release conditions do not unduly infringe Samiuddin's fundamental interests, their restrictions are limited in duration under the speedy-trial rules, and the State does not seek to terminate his parental rights. Although

---

[2] Because Samiuddin did not ask us to consider the Arizona Constitution, we analyze his rights under the United States Constitution and our existing precedent. *See, e.g.*, *State v. Thornton*, 187 Ariz. 325, 331 n.3 (1996) (analyzing petitioner's state and federal constitutional claims under the same standard when he did not argue that Arizona's protections were more extensive than under the federal counterpart).

we agree that Samiuddin has a fundamental right to parent his children, and the pretrial release conditions implicate that right, this infringement does not require strict scrutiny review. *Cf. Simpson v. Miller* ("*Simpson II*"), 241 Ariz. 341, 347–48 ¶ 22 (2017) (citing cases for the proposition that "the [United States Supreme] Court has not consistently applied strict scrutiny to infringement of fundamental rights").

**¶16** Samiuddin relies primarily on civil cases involving government infringement of parental decisions concerning children's familial contact, health, and education for the proposition that strict scrutiny applies here. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 68–69, 72 (2000) (affirming mother's right to limit paternal grandparent visits while reasoning that, if a parent is "fit," "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children"); *Parham v. J. R.*, 442 U.S. 584, 604 (1979) (preserving parent's right to have child admitted to a mental health hospital); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534–35 (1925) (confirming parent's right to enroll child in non-public, religious school). These cases are distinguishable, however, because the purpose of pretrial release conditions that restrict contact with minors is not to substitute the state's judgment for that of a presumptively fit parent concerning a child's care, but rather to effectuate the state's compelling interest in protecting minor children from potential harm by a parent charged with a crime under certain circumstances. Accordingly, a defendant's fundamental parental rights may be balanced with the state's interests in protecting the accused's children. *Cf. United States v. Salerno*, 481 U.S. 739, 750–51 (1987) (noting that a defendant's fundamental interest in liberty "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society").

**¶17** Samiuddin cites no cases applying strict scrutiny review to discretionary pretrial release conditions implicating fundamental rights. Our approach is consistent with our and other courts' jurisprudence rejecting strict scrutiny review in this context and analogous circumstances. *See, e.g.*, *Simpson II*, 241 Ariz. at 348 ¶ 23 (noting that *Salerno* did not apply strict scrutiny to the Bail Reform Act); *State v. Jorgenson*, 312 P.3d 960, 967–68 (Wash. 2013) (applying intermediate scrutiny and rejecting an as-applied challenge to a law that categorically restricted defendant's pretrial rights to possess firearms because the release condition temporarily restricted

defendant's right to bear arms only after the trial court found probable cause that defendant had committed a serious offense); *Costa v. Mackey*, 227 Ariz. 565, 569 ¶ 7 (App. 2011) (reviewing the trial court's determination setting bond at $75 million for an abuse of discretion); *cf. Block v. Rutherford*, 468 U.S. 576, 584 (1984) (holding that a pretrial detention condition, including denying pretrial detainees visitation with family members, must be "reasonably related to a legitimate governmental objective"); *Allen v. State*, 141 A.3d 194, 207 (Md. 2016) (enforcing a probation condition precluding a child sex offender defendant's unsupervised contact with his children as "reasonably related to the protection of children"); *Commonwealth v. Lapointe*, 759 N.E.2d 294, 298 (Mass. 2001) (upholding a probation condition preventing defendant convicted of child sex offense from living with his minor children as "reasonably related to the goals of sentencing and probation" (internal quotation marks omitted)).

**¶18**        Although we decline to apply strict scrutiny review to Samiuddin's release conditions, we note that the Arizona Constitution, statutes, and rules restrict discretionary pretrial release conditions. The Arizona Constitution prohibits excessive bail. Ariz. Const. art. 2, § 15. To effectuate this principle, Rules 7.2(a), 7.3(b), and A.R.S. § 13-3967(D)(6) require release conditions to be "the least onerous" and "reasonable and necessary" to protect the community. The Arizona discretionary pretrial release scheme, faithfully applied, also satisfies Fourteenth Amendment substantive due process standards because, by its terms, it requires courts to tailor pretrial release conditions to be the least onerous, reasonable and necessary to effectuate the state's compelling interest in protecting "other persons or the community." *Cf. United States v. Wolf Child*, 699 F.3d 1082, 1092–93 (9th Cir. 2012) (noting that 18 U.S.C. § 3583(d) requires that release conditions involve "no greater deprivation of liberty than is reasonably necessary" when imposing a "restrictive condition on the exercise of a particularly significant liberty interest" (internal quotation marks omitted)). Here, because the trial court must limit infringement of a defendant's parental rights to the least onerous condition reasonable and necessary to protect the children, we need not further assess the applicable level of scrutiny because the requirements satisfy any applicable standard. *Cf. United States v. Skoien*, 614 F.3d 638, 641–42 (7th Cir. 2010) (rejecting rational basis as the appropriate standard of review for restrictions on firearms, but declining to unnecessarily "get more deeply into the 'levels of scrutiny' quagmire").

### B.    Evidentiary Hearing

**¶19**        Samiuddin further contends that he was entitled to an evidentiary hearing when the trial court imposed his initial pretrial release conditions at his arraignment and when he moved to reconsider the conditions.    Arizona rules and statutes, however, do not require an evidentiary hearing to impose initial pretrial release conditions or to reconsider the conditions; rather, what is required is an opportunity to be heard on release conditions.  *See* Ariz. R. Crim. P. 4.2(a)(7) (requiring that, at a suspect's initial appearance, a magistrate shall "[d]etermine the conditions of release in accordance with Rule 7.2"); *Mendez v. Robertson*, 202 Ariz. 128, 130–31 ¶¶ 7, 9 (App. 2002) (holding that "[n]either [Rule 7.2(a)] nor [A.R.S. § 13-3967(B)] affords the person an evidentiary hearing for a subsequent review of release conditions.  Had the legislature wanted to permit such a hearing, it could have so indicated, as it did in A.R.S. § 13-3961, which states that a court may determine that an offense is not bailable only after a hearing." Defendant "was afforded a hearing, just not the full evidentiary hearing he desired").

**¶20**        Although Arizona rules and statutes do not entitle Samiuddin to an evidentiary hearing when the trial court imposes or subsequently reviews his release conditions, he argues, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976), that procedural due process requires it.   "[D]ue process is flexible and calls for such procedural protections as the particular situation demands," *id.* at 334 (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)), and the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *cf. State v. Hidalgo*, 241 Ariz. 543, 548–49 ¶¶ 8–12 (2017) (rejecting the argument that an evidentiary hearing was required concerning a motion in a capital case).  The *Mathews* test, which we approved in the parental rights severance context in *Kent K. v. Bobby M.*, 210 Ariz. 279, 285 ¶ 29 (2005), requires courts to consider three factors in assessing whether procedural due process requires additional safeguards such as an evidentiary hearing: (1) the private interest affected; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." *Id.* at 286 ¶ 33 (quoting *Mathews*, 424 U.S. at 335).

**¶21** Here, under the first *Mathews* factor—the private interest affected—we acknowledge that the pretrial release conditions restraining Samiuddin's contact with his children implicate his fundamental liberty interest in the care, custody and control of his children, but that infringement is less than in dependency and severance cases because the speedy-trial rules limit the pretrial release conditions to the duration of the criminal case and their objective is not to interfere with, or sever, his parental rights. Further, the second and third *Mathews* factors, as discussed below, indicate that there is no general right to an evidentiary hearing in this context.

**¶22** The second factor—the risk of error due to procedural inadequacies—does not advance Samiuddin's cause. Rule 7.3(b) provides Samiuddin sufficient due process safeguards and poses minimal risk of error because he was assisted by an attorney and a translator, timely heard before a neutral judge, permitted to argue, and, pursuant to Rule 7.4(c), offered information otherwise inadmissible under evidentiary rules, much as he would in an evidentiary hearing. In fact, contrary to Samiuddin's claim that he was deprived of an opportunity to be heard, on rehearing of his release conditions, the trial court relaxed Samiuddin's pretrial restrictions to allow him supervised visits with his children.

**¶23** Finally, the third factor—the state's interests—does not convince us that due process requires an evidentiary hearing. Samiuddin concedes the state's compelling interest in protecting his children, the trial court is required to fashion release conditions that will ensure public safety, and we are not persuaded that the value of an additional tier of judicially-mandated evidentiary hearings outweighs the state's increased fiscal and administrative burdens borne of additional litigation.

### C. Individualized Determination

**¶24** As noted above, Arizona rules require a trial court to impose "the least onerous condition or conditions . . . that are reasonable and necessary to protect other persons or the community from risk posed by the person or to secure the appearance of the person in court." Ariz. R. Crim. P. 7.2(a). Discerning the "least onerous" release condition "reasonable and

necessary" to protect the public necessarily requires the judge to make an individualized determination. *Cf. Simpson II*, 241 Ariz. at 349 ¶ 31 (holding that "categorically denying bail for all persons charged with sexual conduct with a minor" is unconstitutional and, instead, an individualized determination is required). The "individualized determination" is a "case-specific inquiry" into the future dangerousness of the accused, which ensures the release condition comports with due process. *See id.*; *cf. Wolf Child*, 699 F.3d at 1092–93 (stating that, pursuant to 18 U.S.C. § 3583(d), to satisfy an "enhanced procedural requirement" when placing a "restrictive condition on the exercise of a particularly significant liberty interest," a court "must itself point to the evidence in the record on which it relies").

**¶25**      We hold that due process and, by implication, Rules 7.2(a) and 7.3(b), require the trial court to make an individualized determination in setting discretionary pretrial release conditions that restrict parents' access to their minor non-victim children. Consistent with due process standards, a defendant has a right to be heard "at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333, but a trial court is not generally required to conduct an evidentiary hearing. Nor is the trial court required to find evidence of actual harm to a minor non-victim child as a prerequisite to imposing a condition restricting contact; such a requirement would undermine the prophylactic value in release conditions fashioned to protect the community, including defendants' minor children. The trial court must, however, make findings and articulate its reasoning for determining that the condition is the least onerous measure reasonable and necessary to mitigate an identifiable risk of harm.

**¶26**      However, we do not reach Samiuddin's argument that the conditions imposed here are more restrictive than necessary to meet the State's compelling interest in protecting his children, because we cannot assess whether the conditions are the least onerous measures in the absence of a complete record and an individualized determination.

## CONCLUSION

**¶27**      Because we lack an adequate record on which to review whether the trial court's pretrial release conditions comply with newly promulgated Rules 7.2(a) and 7.3(b) and are based on an individualized determination, we grant relief to Samiuddin by vacating those conditions

and directing the trial court to consider anew any appropriate pretrial release conditions.