BROWN, Judge:
¶1 The State challenges the denial of its request that Carlos Espinoza-Sañudo ("Defendant") be held without bond because his presence was secured through issuance of a writ of habeas corpus ad prosequendum ("Writ"), which granted the State temporary physical custody of Defendant to allow prosecution of his pending criminal charges. For the following reasons, we hold that the respondent commissioner erred in allowing Defendant to post a bond because releasing him from custody conflicted with the express terms of the Writ.
BACKGROUND
¶2 The State arrested Defendant and charged him with three counts of sale or transportation of narcotic drugs and one count of possession of narcotic drugs for sale, all class 2 felonies, after he sold drugs to an undercover detective. Defendant was released after posting a $2,500 bond, but the United States Immigration and Customs Enforcement ("ICE") took him into custody and detained him for removal proceedings.
¶3 When Defendant failed to appear at a status conference for his pending criminal charges, the superior court issued a bench warrant. The State then petitioned for the Writ, requesting permission from ICE to transfer physical custody of the Defendant to the county sheriff until final adjudication of the pending criminal charges. The superior court's criminal presiding judge issued the Writ, which directed the Eloy Detention Center Warden or the Maricopa County Sheriff to bring Defendant to the superior court, "keep [him] in custody and available for all court proceedings until final judicial disposition is completed," and then "return *1042 [him] to the prison from which custody was obtained ... within a reasonable time."
¶4 ICE honored the Writ and the State took physical custody of Defendant. Despite the terms of the Writ, the commissioner set release conditions, including an $1,800 bond. The State filed a motion requesting Defendant be held without bond because he would be immediately deported by ICE if released, depriving the State of its opportunity to prosecute him. The State also contended Defendant was merely "on loan" from the federal government and thus "not eligible for bail or any release conditions." The commissioner denied the motion, and the State challenged the decision by filing its petition for special action in this court. In response, Defendant argued in part that the issue was moot because he had accepted a plea offer and was sentenced to a prison term.
¶5 Acknowledging mootness, we determined exercising special action jurisdiction was appropriate because the petition raises an important issue, affects the public interest, and is capable of repetition yet evading review. See State v. Valenzuela , 144 Ariz. 43, 44, 695 P.2d 732, 733 (1985) (noting the discretion of appellate courts to decide issues that have become moot but pose significant issues that are likely to recur); see also Velazquez v. Myers , 1 CA-SA 17-0298, 2018 WL 326515, at *2, ¶ 8 (Ariz. Ct. App. Jan. 9, 2018) (mem. decision) (addressing whether the superior court was permitted to release a defendant on his own recognizance when he remained in federal custody and "on loan" to the State pursuant to a writ). We issued an order accepting jurisdiction and granting relief, indicating a written decision would follow. We now explain our reasoning for the order.
DISCUSSION
¶6 The State argues the commissioner acted in excess of his legal authority by denying its request to hold Defendant without bond, contending he was required to be held in custody until adjudication was complete because his presence was obtained from ICE pursuant to the Writ. See Ariz. R.P. Spec. Act. 3(b) (listing the questions that may be raised in a special action, including "[w]hether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority"). Defendant counters that the commissioner acted properly because the State failed to establish proof supporting either of the two methods by which a court may properly deny bail under Arizona law. See Simpson v. Miller , 241 Ariz. 341, 348, ¶¶ 23-26, 387 P.3d 1270, 1277-78 (2017) (explaining a superior court may deny bail (1) based on an individualized determination of a defendant's dangerousness, or (2) where the proof is evident or presumption great that defendant committed a crime presenting an "inherent risk of future dangerousness").
¶7 The constitutional framework of the United States allocates sovereignty between federal and state governments. See, e.g. , Murphy v. NCAA , --- U.S. ----, 138 S.Ct. 1461, 1475-77, 200 L.Ed.2d 854 (2018). Defendant correctly notes the limited circumstances in which the superior court may deny bail, but this case turns on the legal significance of the Writ, which stems from a longstanding practice permitting both sovereigns "to enforce and vindicate" their respective charges against a defendant. Lunsford v. Hudspeth , 126 F.2d 653, 655 (10th Cir. 1942).
¶8 Each sovereign has "its own system of courts to declare and enforce its laws," and it is imperative that each system remains "effective and unhindered in its vindication of its laws." Ponzi v. Fessenden , 258 U.S. 254, 259, 42 S.Ct. 309, 66 L.Ed. 607 (1922). For this reason, it is well-established that "the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration," Thomas v. Brewer , 923 F.2d 1361, 1365 (9th Cir. 1991), and "must be permitted to exhaust its remedy ... before the other [sovereign] shall attempt to take [the defendant] for its purpose," Ponzi , 258 U.S. at 260, 42 S.Ct. 309.
¶9 The first sovereign will lose its priority if (1) it dismisses the charges, (2) it grants bail or parole, or (3) the defendant's sentence expires. See Johnson v. Gill , 883 F.3d 756, 765 (9th Cir. 2018). Priority is not relinquished, however, through consent to a defendant's temporary transfer via a writ of *1043 habeas corpus ad prosequendum , see Ponzi , 258 U.S. at 261, 42 S.Ct. 309, which is a "common law writ ... issue[d] when it is necessary to remove a prisoner in order to prosecute in the proper jurisdiction where the crime was committed," State v. Heisler , 95 Ariz. 353, 354, 390 P.2d 846 (1964). Essentially, the Writ is "the equivalent of a request for temporary [physical] custody." State v. Seay , 232 Ariz. 146, 148, ¶ 7, 302 P.3d 671, 673 (App. 2013) (quoting State v. Loera , 165 Ariz. 543, 545-46, 799 P.2d 884, 886-87 (App. 1990) ); see also 28 C.F.R. § 527.30 ("The Bureau of Prisons will consider a request ... that an inmate be transferred to the physical custody of state ... agents pursuant to a writ of habeas corpus ad prosequendum....").
¶10 Here, the State obtained priority jurisdiction over Defendant when it arrested him for selling drugs. See Brewer , 923 F.2d at 1365. However, the State relinquished its priority by, consistent with Arizona law governing the right to bail, permitting Defendant to post a bond for his release. See Gill , 883 F.3d at 765. ICE then took Defendant into custody, and it acquired priority jurisdiction. In order to continue its prosecution against Defendant, the State petitioned for the Writ, which the superior court granted.
¶11 The terms of the Writ presented to ICE were clear-Defendant would remain in State custody until a final adjudication of his pending charges in superior court and then be returned to the Eloy Detention Center. Stated differently, ICE did not relinquish its priority jurisdiction; it merely agreed to loan physical custody of Defendant to the State. See Brewer , 923 F.2d at 1367 (noting that an accused "transferred pursuant to a writ ad prosequendum " is considered to be "on loan" to the federal authorities such that "jurisdiction over the accused continues uninterruptedly." (quoting Crawford v. Jackson , 589 F.2d 693, 695 (D.C. Cir. 1978) ); e.g. , Thomas v. Whalen , 962 F.2d 358, 361 n.3 (4th Cir. 1992) (same); Causey v. Civiletti , 621 F.2d 691, 693 (5th Cir. 1980) (same).
¶12 Implicit in this arrangement was ICE's understanding that the State would adhere to the Writ's conditions as a "practice [of] comity which the harmonious and effective operation of both systems of courts requires." Ponzi , 258 U.S. at 263, 42 S.Ct. 309 ; see also Fremont Indem. Co. v. Indus. Comm'n , 144 Ariz. 339, 345, 697 P.2d 1089, 1095 (1985) ("Comity is ... giv[ing] effect to the laws and judicial decisions of another ... jurisdiction, not as a matter of obligation, but out of deference and mutual respect." (internal quotation and citation omitted) ). We also presume that ICE's decision to honor the Writ was made pursuant to, or at least consistent with, federal regulations governing state-issued writs ad prosequendum . Those provisions give a federal institution's warden the authority to allow, pursuant to such a writ, the transfer of a "state [or] federal inmate serving sentences in federal institutions" only if there are no substantial concerns regarding whether "the inmate's appearance is necessary, ... state and local arrangements are satisfactory, ... and ... federal interests, which include those of the public, will not be interfered with, or harmed." 28 C.F.R. § 527.31(a) - (b). If the writ raises substantial concerns regarding these matters, the warden may decline authorization of the transfer. Id.
¶13 Granted, this regulatory scheme appears to cover only those cases where a defendant is already serving a prison sentence. But we see nothing in that scheme precluding a federal warden from relying on the criteria outlined in 28 C.F.R. § 527.31(a) - (b) to determine whether to transport a pretrial detainee under a writ ad prosequendum . Moreover, the regulations are consistent with the common law notion that writs are a function of comity. Adherence to a writ's terms, regardless of whether the defendant has been convicted and sentenced, promotes comity between the two sovereigns; the practice of sharing custody of defendants would be substantially undermined if a court without priority could issue a ruling that conflicts with the writ. Such non-compliance would, among other things, likely create a "substantial concern" regarding federal interests and may deter future writs from being honored, which could ultimately deprive the State of its opportunity to prosecute individuals in federal custody.
*1044 ¶14 Given the State's interest in vindicating and enforcing the laws of Arizona, comity mandates a finding that once the Writ was issued and transfer of Defendant was authorized, the commissioner had no discretion to release him from custody. Cf. Taylor v. Reno , 164 F.3d 440, 445 (9th Cir. 1998) ("Because the state retained primary jurisdiction, the district court did not have the authority to place [Defendant] into federal custody for the purpose of commencing his federal sentence."). We therefore reject Defendant's implicit assertion that the commissioner was obligated to apply Simpson in determining whether Defendant could be held without bond. Simpson , 241 Ariz. at 348, ¶¶ 23-26, 387 P.3d at 1278. The parameters of Defendant's State-custody arrangement were defined by the specific terms of the Writ and the release conditions, if any, imposed as part of his removal proceedings. Cf. Roche v. Sizer , 675 F.2d 507, 510 (2d Cir. 1982) (explaining that although the sovereign with priority jurisdiction relinquished it by allowing the defendant to post bond, he was not eligible for release because priority jurisdiction passed to the state, which had not granted him bail or release terms).
CONCLUSION
¶15 The commissioner acted in excess of his legal authority in denying the State's motion to hold Defendant without bond. We therefore accept jurisdiction and grant relief.