IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA, *Petitioner,*

*v.*

THE HONORABLE KEVIN B. WEIN, COMMISSIONER OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Commissioner,*

GUY JAMES GOODMAN,
*Real Party in Interest.*

No. CR-17-0221-PR
Filed May 25, 2018

Appeal from the Superior Court in Maricopa County
The Honorable Kevin B. Wein, Commissioner
No. CR2017-108708
**AFFIRMED**

Opinion of the Court of Appeals, Division One
242 Ariz. 352 (App. 2017)
**VACATED**

COUNSEL:

William G. Montgomery, Maricopa County Attorney, Lisa Marie Martin
(argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Nicholaus Podsiadlik
(argued), Jamie Allen Jackson, Deputy Public Defenders, Phoenix,
Attorneys for Guy James Goodman

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Rusty D. Crandell (argued), Assistant Solicitor General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

David J. Euchner (argued), Tucson, Deputy Public Defender, Attorney for Amici Curiae Arizona Attorneys for Criminal Justice and Pima County Public Defender

Jared G. Keenan, Kathleen E. Brody, Phoenix, Attorneys for Amicus Curiae American Civil Liberties Union Foundation of Arizona; Andrea Woods, American Civil Liberties Union Foundation Criminal Law Reform Project, New York, NY, Attorneys for the American Civil Liberties Union and the American Civil Liberties Union of Arizona

---

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICE PELANDER joined. JUSTICE BOLICK, joined by JUSTICES GOULD and LOPEZ, dissented. JUSTICE GOULD, joined by JUSTICE LOPEZ, dissented.

JUSTICE TIMMER, opinion of the Court:

¶1        Persons charged with sexual assault must not be released on bail if they pose a danger of committing new sexual assaults or other dangerous crimes while awaiting trial. The question here is how this may be accomplished in a manner that furthers this public-safety goal while preserving an accused's constitutionally guaranteed liberty interest.

¶2        Article 2, section 22(A)(1), of the Arizona Constitution and A.R.S. § 13-3961(A)(2) categorically prohibit bail for all persons charged with sexual assault if "the proof is evident or the presumption great" that the person committed the crime, without considering other facts that may justify bail in an individual case. We hold that these provisions, on their face, violate the Fourteenth Amendment's Due Process Clause. Unless the defendant is accused of committing sexual assault while already admitted to bail on a separate felony charge, the trial court must make an individualized bail determination before ordering pretrial detention. *See* Ariz. Const. art. 2, § 22(A)(2)–(3).

**BACKGROUND**

¶3        The Arizona Constitution provides that all persons charged with crimes shall be bailable unless the accused is charged with a crime that falls within an exception and the proof is evident or the presumption great that he committed that crime.  Ariz. Const. art. 2, § 22(A).  Before 2002, these exceptions were limited to capital offenses, felony offenses committed while the accused is on bail for a separate felony charge, and felony offenses when the person charged poses a substantial danger to any other person or the community and no conditions of release would reasonably assure safety.  A.R.S. § 13-3961, historical note.

¶4        In 2002, Arizona voters added to the listed exceptions by passing Proposition 103, which amended article 2, section 22(A)(1), to forbid bail when the proof is evident or the presumption great that an accused committed sexual assault, sexual conduct with a minor under fifteen years of age, or molestation of a child under fifteen years of age ("Proposition 103 offenses").  *See id.*; *see also* A.R.S. § 13-3961(A)(2)–(4) (codifying Proposition 103).  Proposition 103 also declared that the purposes of bail and any conditions for release include "[a]ssuring the appearance of the accused," "[p]rotecting against the intimidation of witnesses," and "[p]rotecting the safety of the victim, any other person or the community."  Ariz. Const. art. 2, § 22(B); A.R.S. § 13-3961, historical note.

¶5        In *Simpson v. Miller* (*Simpson II*), 241 Ariz. 341, 349 ¶ 31 (2017), *cert. denied*, *Arizona v. Martinez*, 138 S. Ct. 146 (2017), this Court held article 2, section 22(A)(1), and § 13-3961(A)(3) facially unconstitutional as they related to charges of sexual conduct with a minor under fifteen years of age.  After *Simpson II* the superior court required individualized bail determinations pursuant to § 13-3961(D) for all persons charged with Proposition 103 offenses.  Section 13-3961(D) provides, in relevant part:

> [A] person who is in custody shall not be admitted to bail if the person is charged with a felony offense and the state certifies by motion and the court finds after a hearing on the matter that there is clear and convincing evidence that the person charged poses a substantial danger to another person

3

or the community or engaged in conduct constituting a violent offense, that no condition or combination of conditions of release may be imposed that will reasonably assure the safety of the other person or the community and that the proof is evident or the presumption great that the person committed the offense.

¶6        In 2017, the State charged Guy Goodman with sexually assaulting a victim in 2010. "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." A.R.S. § 13-1406(A). The state can charge a person with sexual assault at any time as no statute of limitations applies to the offense. *See* A.R.S. § 13-107(A).

¶7        Over the State's objection that sexual assault remains a non-bailable offense after *Simpson II*, the superior court conducted a § 13-3961(D) bail hearing. A police officer testified that the victim claimed that Goodman, a guest in the victim's home after a night of socializing, touched her vaginal area beneath her underwear while she was sleeping and without her consent. DNA tested from an external vaginal swab confirmed this contact. The officer also said that Goodman, when confronted with the DNA results, admitted digital penetration. The court ruled that although there was proof evident or a presumption great that Goodman committed the offense, the State had failed to "meet its burden of clear and convincing evidence to show that [Goodman] poses a substantial danger to other persons or the community." (The State did not assert that Goodman committed a "violent offense," which is defined as either a dangerous crime against children or terrorism. A.R.S. § 13-3961(D).) The court reasoned that "[t]here was no evidence of any recent felony criminal history or prior similar offenses or arrests nor any evidence of criminal offenses between the time of this alleged offense in 2010 and today," nor any history of contact, threats, or intimidation aimed at the victim or any witnesses. The court set bail at $70,000, required that Goodman's movements be electronically monitored upon release, and imposed other conditions, including that he not possess any weapons, use non-prescription drugs, or contact the victim.

4

¶8        On special action review, the court of appeals vacated the bail order, holding that "[s]exual assault remains a non-bailable offense" after *Simpson II*, and so a § 13-3961(D) hearing is not required. *State v. Wein*, 242 Ariz. 352, 353 ¶ 1 (App. 2017).

¶9        We granted review to determine whether the categorical denial of bail for persons charged with sexual assault, when the proof is evident or the presumption great as to the charge, violates due process, an issue of statewide importance. Although Goodman pleaded guilty and was sentenced while this matter was pending, we nevertheless decide the issue because it is capable of repetition yet could evade review due to the temporary duration of pretrial detention. *See State v. Valenzuela*, 144 Ariz. 43, 44 (1985). We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

### I. Restrictions on pretrial detention: the *Salerno* standards

¶10        The constitutional validity of Proposition 103's prohibition on bail for defendants accused of sexual assault is an issue of law we review de novo. *See Simpson II*, 241 Ariz. at 344 ¶ 7. As the challenging party, Goodman bears the "heavy burden" of demonstrating that the restriction is facially unconstitutional. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

¶11        The Due Process Clause prohibits the government from punishing an accused by jailing him before trial. *See id.* at 746. But if pretrial detention is regulatory rather than punitive, the government's interest can, in appropriate and exceptional circumstances, outweigh an individual's "strong interest in liberty," an important, fundamental right. *Id.* at 748, 750; *see also id.* at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

¶12        In *Salerno*, the United States Supreme Court used a two-step standard to determine whether the Bail Reform Act's provisions permitting pretrial detention constituted impermissible punishment or potentially permissible regulation. *Id.* at 747. "Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on [1] whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and [2] whether it appears excessive in

relation to the alternative purpose assigned to it."  *Id.* (internal quotation marks and alterations omitted) (quoting *Schall v. Martin*, 467 U.S. 253, 269 (1984)).  The Court concluded that the Act was regulatory.  *Id.* at 748; *cf. Simpson II*, 241 Ariz. at 347 ¶ 20 (applying the *Salerno* standard).

**¶13**          The *Salerno* Court next used a two-step "heightened scrutiny" standard to determine whether the Bail Reform Act, although regulatory, nevertheless violated the due-process restriction on pretrial detention. *Salerno*, 481 U.S. at 748–50; *Simpson II*, 241 Ariz. at 348 ¶ 23.  Under that standard, pretrial detention is constitutionally permissible if the government has both a "legitimate and compelling" purpose for restricting an accused's liberty, and the restriction is "narrowly focuse[d] on a particularly acute problem."  *Salerno*, 481 U.S. at 749–50, 752.  The Court determined that the Act met this standard.  *Id.* at 750–51; *cf. Simpson II*, 241 Ariz. at 345, 348 ¶¶ 9, 23 (applying the second *Salerno* standard to conclude that the categorical prohibition of bail for arrestees charged with sexual conduct with a minor under age fifteen violates due process).

**¶14**          Consistent with *Salerno* and *Simpson II*, we first examine whether Proposition 103's categorical prohibition on bail for arrestees charged with sexual assault is regulatory or punitive.  If the latter, the prohibition constitutes a per se due-process violation.  *See Simpson II*, 241 Ariz. at 347 ¶ 20.  If the restriction is regulatory, we must determine whether it nevertheless violates due process.  Finally, we decide whether any due-process violation renders the restriction facially unconstitutional.

## II.  Application here

### A.  Regulation vs. punishment

**¶15**          In *Simpson II*, we concluded that Proposition 103's categorical prohibition of bail for an arrestee charged with sexual conduct with a minor under age fifteen, when the proof is evident or presumption great that the person committed the offense, is regulatory rather than punitive.  *Id.*  For the same reasons, Proposition 103's identical prohibition on bail for persons charged with sexual assault is regulatory.

## B. Due process

### 1. Legitimate and compelling purpose

¶16      The publicity pamphlet for Proposition 103 reflects that the measure's purpose was both to ensure that sexual predators facing potential life sentences would be present for trial and to keep "rapists and child molesters" from endangering others while awaiting trial. The senator who sponsored the legislation placing Proposition 103 on the ballot explained to voters that "sexual predators . . . know they could be facing lifetime incarceration" and therefore "ha[ve] no incentive to ever return" to court, making Proposition 103 necessary to "keep dangerous sexual predators off our streets." *See* Ariz. Sec'y of State, 2002 Publicity Pamphlet 16 (2002), http://apps.azsos.gov/election/2002/Info/pubpamphlet/ english/prop103.pdf ("Publicity Pamphlet"). Others echoed the senator, focusing on the need to "prevent the worst sexual predators from jumping bail or even simply walking our neighborhoods," stopping "rapists and child molesters" from reoffending, and treating "bail for rapists and child molesters . . . like bail for murderers." *Id.* at 16–17.

¶17      Ensuring that an accused is present for trial serves a legitimate and compelling purpose. *Cf. Salerno*, 481 U.S. at 749 ("[A]n arrestee may be incarcerated until trial if he presents a risk of flight."). And the government has an equally compelling interest in protecting victims and the public from those who would commit sexual assault while on pre-trial release. *See id.* at 747 ("There is no doubt that preventing danger to the community is a legitimate regulatory goal."); *Simpson II*, 241 Ariz. at 348 ¶ 24 (finding that Proposition 103's prohibition on bail for persons accused of sexual contact with a minor under fifteen years of age serves the legitimate and compelling purpose of crime prevention).

¶18      Goodman takes issue with our analysis in *Simpson II* and argues that Proposition 103 did not advance a legitimate and compelling government purpose because voters were misled by suggestions that, without the categorical prohibition, courts would have to grant bail to persons charged with Proposition 103 offenses. We disagree. The Publicity Pamphlet stated that without the measure, persons charged with Proposition 103 offenses would be "eligible for bail," not automatically granted bail. Publicity Pamphlet, *supra* ¶ 16 at 16.

**¶19** The prohibition on bail for those charged with sexual assault serves legitimate and compelling regulatory purposes and thus satisfies the first prong of the *Salerno* standard.

## 2. Narrowly focused measure

**¶20** Proposition 103's categorical prohibition of bail for persons charged with sexual assault is "narrowly focused" if the proof is evident or the presumption great regarding the charge, and a sexual assault charge either presents an inherent flight risk or inherently demonstrates that the accused will likely commit a new dangerous crime while awaiting trial even with release conditions. *Simpson II*, 241 Ariz. at 348–49 ¶¶ 26, 30.

### a. Flight risk

**¶21** A sexual assault charge does not present an inherent flight risk. "Sexual assault" concerns an array of deviant behaviors and, depending on individual circumstances, punishment ranges from 5.25 years' imprisonment to life imprisonment. A.R.S. § 13-1406(B)–(D). The State does not cite any authority, and we are not aware of any, suggesting that the prospect of imprisonment for a non-capital offense inherently predicts that an accused will not appear for trial. *Cf. Simpson II*, 241 Ariz. at 349 ¶ 26 ("Historically, capital offense charges have been considered to present an inherent flight risk sufficient to justify bail denial."). And even if the possibility of a life sentence presents an inherent flight risk, a concern expressed in the Publicity Pamphlet, *supra* ¶ 16, the prohibition is excessive as it sweeps in those arrestees facing only a term of years' imprisonment if convicted.

### b. Future dangerousness while awaiting trial

**¶22** To begin, the question here is not whether sexual assault is a deplorable crime that endangers and dehumanizes victims — it is, and it does. *Cf. Coker v. Georgia*, 433 U.S. 584, 597 (1977) (describing rape as "highly reprehensible" and "the ultimate violation of self" after homicide). The pertinent inquiry is whether a sexual-assault charge alone, when the proof is evident or the presumption great as to the charge, inherently demonstrates that the accused will pose an unmanageable risk of danger if released pending trial. *See Simpson II*, 241 Ariz. at 349 ¶ 30; *cf. Kansas v.*

8

*Hendricks*, 521 U.S. 346, 358 (1997) (stating in the civil commitment context that "[a] finding of dangerousness, standing alone, is ordinarily not a sufficient ground" to justify commitment and that some additional factor is required to narrow the class to persons "who are unable to control their dangerousness"). For three reasons, we agree with Goodman that it does not.

¶23 First, Proposition 103 does not provide any procedures to determine whether a person charged with sexual assault would pose a danger if granted pre-trial release. *Cf. Foucha v. Louisiana*, 504 U.S. 71, 81–82 (1992) (invalidating Louisiana's continued detention of insanity acquittees who are no longer mentally ill because, "[u]nlike the sharply focused scheme" in *Salerno*, which involved individualized assessment, Louisiana's scheme does not include "an adversary hearing at which the State must prove . . . that [the acquittee] is demonstrably dangerous to the community"); *Salerno*, 481 U.S. at 742–43, 747, 750 (finding that the Bail Reform Act was narrowly focused on preventing danger to the community because, in part, a court could only order pre-trial detention after conducting a "full-blown adversary hearing" and finding that no conditions would "assure . . . the safety of any other person and the community"). A court's finding that the proof is evident or the presumption great only shows a likelihood that an accused committed the charged sexual assault. *See Simpson II*, 241 Ariz. at 346 ¶ 16 (describing the standard as requiring substantial proof that the accused committed the charged crime). It does not address the likelihood that an accused would commit a new sexual assault or other dangerous crime if released pending trial. *Cf. United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) ("Neither *Salerno* nor any other case authorizes detaining someone in jail while awaiting trial, or the imposition of special bail conditions, based merely on the fact of arrest for a particular crime.").

¶24 Second, nothing shows that most persons charged with sexual assault, or even a significant number, would likely commit another sexual assault or otherwise dangerous crime pending trial if released on bail. *Cf. Simpson II*, 241 Ariz. at 348–49 ¶¶ 26, 30 (stating that any category of crime must serve as "a convincing proxy" for future dangerousness (citation and internal quotation marks omitted)). Indeed, this showing would be a difficult undertaking. *Cf. Schall*, 467 U.S. at 279 ("We have also recognized that a prediction of future criminal conduct is an experienced prediction

based on a host of variables which cannot be readily codified.") (internal quotation marks omitted).

¶25        The State points to recidivism rates among sex offenders as evidence of the likelihood that sexual assault arrestees would commit a new sexual assault pending trial if released on bail.  The cited empirical studies are not illuminating, however, as they concern a wide variety of sex crimes besides sexual assault, arrive at disparate conclusions, and for the most part do not focus on the relatively short time period between arrest and trial. Regardless, none of the studies cited reflects that most convicted rapists re-offend, the highest number being 5.6% reoffending within five years of release from prison.  *See* Matthew R. Durose et al., *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, at 2 (U.S. Dep't of Justice 2016), https://www.bjs.gov/content/pub/pdf/rprts05p0510_st.pdf. And the only cited study concerning accused rapists released on bail reflects that 3% committed another unspecified felony pending trial.  *See* Brian A. Reaves, *Felony Defendants in Large Urban Counties, 2009 − Statistical Tables* 21 (U.S. Dep't of Justice 2013), https://www.bjs.gov/content/pub/pdf/fdluc09.pdf.

¶26        *Smith v. Doe*, 538 U.S. 84 (2003), and *McKune v. Lile*, 536 U.S. 24 (2002), relied on by Justice Bolick in his dissent, do not persuade us that recidivism rates justify a categorical denial of bail.  *See infra* ¶ 45.  At issue in *Smith* was whether Alaska's registration requirement for convicted sex offenders imposed punishment so that any retroactive application would violate the Ex Post Facto Clause.  *Smith*, 538 U.S. at 89.  Employing a test like the one used in *Salerno* to determine whether an act is regulatory or punitive, the Court concluded that the registration requirement was regulatory.  *Id.* at 105–06.  In rejecting an argument that application of the registration requirement to all convicted sex offenders without regard to their future dangerousness was excessive in relation to a proper regulatory purpose, the Court noted  that a sex-offense conviction could provide evidence of a "substantial risk of recidivism," and that Alaska could "legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness." *Id.* at 103–04.

¶27        But *Smith* did not establish that a state can regulate sex offenders as a class in *every* situation without violating due process, as Justice Bolick asserts.  *See infra* ¶¶ 45–47.  Indeed, the Court suggested the

opposite by distinguishing Alaska's sex-offender-registration requirement from a Kansas act that authorized civil commitment of sexually violent predators for a maximum of one year, subject to new commitment proceedings. 538 U.S. at 104 (citing *Hendricks*, 521 U.S. at 364). In *Hendricks*, the Court rejected a due-process challenge to the Kansas act, reasoning that because it required an individualized finding of future dangerousness linked with a "mental abnormality" or "personality disorder," it sufficiently "narrow[ed] the class of persons eligible for confinement to those who are unable to control their dangerousness." 521 U.S. at 358. (Contrary to Justice Bolick's characterization, the *Hendricks* Court's due-process analysis did not turn on the potential that sexually violent predators could be indefinitely confined. *See infra* ¶ 48.) The *Smith* Court concluded that a similarly individualized risk assessment was not necessary to uphold Alaska's law as regulatory, noting that "[t]he State's objective in *Hendricks* was involuntary (and potentially indefinite) confinement of particularly dangerous individuals," which made individual assessments appropriate given "[t]he magnitude of the restraint." *Smith*, 538 U.S. at 104. The Court contrasted sex-offender registration as a "more minor condition" and concluded that in that context "the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions." *Id.* Pretrial detention is more like civil commitment than sex-offender registration, making this case closer to *Hendricks*. And *Smith* does not support a conclusion that the risk of recidivism by some persons on pretrial release justifies categorically dispensing with individual assessments of that risk.

¶28      *McKune* addressed whether requiring convicted sex offenders to admit their crimes as part of an in-prison rehabilitation program violated the Fifth Amendment privilege against self-incrimination. 536 U.S. at 29. The Court began its analysis by noting that "[s]ex offenders are a serious threat in this Nation" and "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id.* at 33. The empirical study relied on by the Court for this conclusion, however, reflects that 7.7% of convicted rapists released from prison in 1983 were rearrested for rape within three years. *See* U.S. Dep't of Justice, *Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983*, at 6 (1997), https://www.bjs.gov/content/pub/

pdf/rpr83.pdf. Although we share the *McKune* Court's view that sex offenders are a "serious threat," the post-conviction recidivism rates do not inherently demonstrate that a person charged with sexual assault will likely commit another sexual assault if released pending trial, particularly if conditions like GPS monitoring are imposed.

¶29 Third, alternatives exist "that would serve the state's objective equally well at less cost to individual liberty." *Simpson II*, 241 Ariz. at 349 ¶ 28. The Arizona Constitution already forbids bail for those charged with any felony when the proof is evident or the presumption great as to the charge, "the person charged poses a substantial danger to any other person or the community," and "no conditions of release which may be imposed will reasonably assure the safety of the other person or the community." Ariz. Const. art. 2, § 22(A)(3); *see also* A.R.S. § 13-3961(D) (codifying art. 2, § 22(A)(3)). Also, a court can set bail and impose restrictions intended to preserve public safety, like the GPS monitoring imposed on Goodman. *See* Ariz. Const. art. 2, § 22(B)(3) ("The purposes of bail and any conditions of release that are set by a judicial officer include . . . [p]rotecting the safety of the victim, any other person or the community.").

¶30 The court of appeals reached a different conclusion from ours by mistakenly focusing on the dangerousness of sexual assault and not on whether a charge inherently predicts the commission of a new sexual assault or otherwise dangerous offense pending trial. *Wein*, 242 Ariz. at 355 ¶ 5; *see also Hendricks*, 521 U.S. at 358; *Simpson II*, 241 Ariz. at 349 ¶ 30. The court seized on a citation signal to interpret *Simpson II* as turning on the fact that sexual conduct with a minor under fifteen years of age could be committed with a victim's consent and therefore "may involve a defendant who is not a danger to the community." *Wein*, 242 Ariz. at 353 ¶¶ 7–8. The court reasoned that after *Simpson II*, a charge of sexual assault, which is always non-consensual, "fulfills the requirement for finding inherent dangerousness." *Id.* ¶ 9. Justice Bolick shares this view. *See infra* ¶ 42.

¶31 In retrospect, the court of appeals' confusion is understandable. We should have immediately explained that just as commission of sexual conduct with a minor under fifteen years of age is not always dangerous, it does not inherently demonstrate future dangerousness pending trial. *See Simpson II*, 241 Ariz. at 349 ¶ 27. We made that point later in the opinion. *See id.* ¶ 30 ("[T]he state may deny bail

categorically for crimes that inherently demonstrate future dangerousness" when the proof is evident or the presumption great, but "[w]hat it may not do, consistent with due process, is deny bail categorically for those accused of crimes that do not inherently predict future dangerousness."); *see also Morreno v. Hon. Brickner/State*, 790 Ariz. Adv. Rep. 24 ¶ 21 (May 2, 2018) ("The mere charge itself [in *Simpson II*] was not a convincing proxy for future dangerousness, and therefore not narrowly focused, because it swept in situations that are not predictive of future dangerousness."). Justice Bolick's view that showing proof evident or presumption great that an accused committed sexual assault alone demonstrates future dangerousness is at odds with *Simpson II*'s holding and also disregards key aspects of *Salerno*'s reasoning and holding. *See infra* ¶ 50; *see also Morreno*, 790 Ariz. Adv. Rep. 24 ¶ 21.

**¶32** Contrary to the dissent's assertion, *infra* ¶ 46, we reaffirm our view expressed in *Simpson II* that due process does not require individualized determinations in every case. 241 Ariz. at 348 ¶ 26. Indeed, we recently rejected a due-process challenge to article 2, section 22(A)(2), of the Arizona Constitution, which precludes bail "[f]or felony offenses committed when the person charged is already admitted to bail on a separate felony charge and where the proof is evident or the presumption great as to the present charge." *Morreno*, 790 Ariz. Adv. Rep. 24 ¶ 38. We concluded that the state had a legitimate and compelling interest in "preventing defendants from committing new felonies while on pretrial release from a prior felony charge," and article 2, section 22(A)(2), narrowly focused on this objective by applying only to defendants who, in fact, likely reoffended while on release. *Id.* ¶¶ 31, 34 (citation and internal quotation marks omitted). "In such cases, an individualized determination serves no narrowing function and is therefore unnecessary." *Id.* ¶ 34. But unlike *Morreno*, the issue here is whether a sexual assault charge inherently predicts that a defendant will commit another dangerous offense pending trial. Due process requires an individualized assessment of this risk because it is not categorically demonstrated, as is the risk presented by a felon who has already reoffended while on pretrial release.

**¶33** In sum, although Proposition 103 has legitimate and compelling regulatory purposes, its categorical prohibition of bail for persons charged with sexual assault, when the proof is evident or the presumption great as to the charge, is not narrowly focused on

accomplishing those purposes. The *Salerno* standard is unmet, meaning the categorical prohibition of bail violates substantive due process. *See Simpson II*, 241 Ariz. at 349 ¶ 30.

### III. Facial unconstitutionality

¶**34** The Arizona Attorney General, in an amicus role, and Justice Gould, in his dissent, argue that even if Proposition 103's categorical prohibition on bail for those charged with sexual assault violates Goodman's substantive-due-process rights, he failed to establish that the prohibition is facially unconstitutional. To succeed on a facial challenge, an admittedly difficult feat, "the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745.

¶**35** Here, Proposition 103's categorical prohibition of bail for everyone charged with sexual assault deprives arrestees of their substantive-due-process right to either an individualized determination of future dangerousness or a valid proxy for it. *See Morreno*, 790 Ariz. Adv. Rep. 24 ¶ 15. There is "no set of circumstances" under which the prohibition would be valid because it lacks either of these features in every application.

¶**36** Echoing his partial dissent in *Morreno*, Justice Gould asserts that (1) the prohibition here is not facially unconstitutional because it applies to arrestees who would, in fact, likely commit a new sexual assault while on pretrial release, and (2) we apply an overbreadth analysis that is properly confined to First Amendment cases. *See id.* ¶¶42, 49 (Gould, J. concurring); *infra* ¶¶ 54, 56. We reject these arguments for the same reasons we did in *Morreno*. *See Morreno*, 790 Ariz. Adv. Rep. 24 ¶¶ 20–23.

### CONCLUSION

¶**37** As in *Simpson II*, we do not lightly set aside citizen-enacted constitutional provisions, whether they are narrowly passed or approved "overwhelming[ly]" by Arizona's voters (an irrelevancy for constitutionality purposes). *Infra* ¶ 39. Nevertheless, article 2, section

22(A)(1), and § 13-3961(A)(2) are facially unconstitutional because they categorically prohibit bail without regard for individual circumstances. To be clear, courts can deny bail to a person charged with sexual assault when the proof is evident or the presumption great as to the charge and must do so when that person "poses a substantial danger to another person or the community." A.R.S. § 13-3961(D). Before doing so, however, courts must engage in an individualized determination by conducting a § 13-3961(D) hearing. We affirm the superior court and vacate the court of appeals' opinion.

BOLICK, J., joined by GOULD, J., and LOPEZ, J., dissenting.

**¶38** Although our colleagues' opinion has substantial merit, we conclude that the differences between the crime of sexual assault at issue here and the crime of sexual conduct with a minor at issue in *Simpson II* are of constitutional magnitude, justifying Arizona citizens' determination that those who are likely to be adjudged guilty of sexual assault should be held without bail pending trial.

**¶39** We begin by recognizing, as did the Court in *Simpson II,* that the challenged provision is part of our state's organic law, whose review against federal constitutional challenges we undertake with "great care" and whose provisions "we strive whenever possible to uphold." 241 Ariz. at 345 ¶ 8. In a close case, we should not expansively construe United States Supreme Court precedents to compel ourselves to invalidate a provision of our constitution; we should seek to the fullest extent possible to harmonize the two. We conclude that no such irreconcilable conflict exists here and that the majority too lightly sets aside the voters' overwhelming determination that those who are shown to be likely guilty of sexual assault should not be released pending trial. The framework set forth by the United States Supreme Court in *Salerno*, while recognizing core liberty interests implicated by pretrial incarceration, emphasized that it has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." 481 U.S. at 748. This is one of those appropriate circumstances.

**¶40** In *Simpson II*, we held that individual determinations of future dangerousness are not necessary in all cases, but that where pretrial incarceration is categorically required, the crime giving rise to such conditions must serve as a "convincing proxy for unmanageable flight risk or dangerousness." 241 Ariz. at 348 ¶ 26 (quoting *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 786 (9th Cir. 2014)). The Court's determination that sexual conduct with a minor was not an adequate proxy for dangerousness was based on the crime's definition, which encompassed consensual activity so that dangerousness was not "inherent" in the crime. *Id.* at 349 ¶¶ 26–27 ("The crime can be committed by a person of any age, and may be consensual," thereby "sweep[ing] in situations where teenagers engage in consensual sex. In such instances, evident proof or presumption great that the defendant committed the crime would suggest little or nothing about

the defendant's danger to anyone."). The Court's analysis made clear that where a crime is not a convincing proxy for dangerousness, an individual assessment of dangerousness is necessary to deny pretrial release. But where a crime is a convincing proxy for dangerousness, a determination by proof evident or presumption great that a defendant committed the crime is sufficient to establish dangerousness and to sustain a categorical prohibition of bail.

¶41 Sexual assault is by definition an extremely dangerous crime. As this Court highlighted in *Simpson II*, absence of consent is a defining feature of sexual assault. *Id.* ¶ 27 (citing A.R.S. § 13-1406(A) defining sexual assault as "intentionally or knowingly engaging in sexual intercourse or oral sexual contact . . . without consent of such person"). Our statutes carefully define and circumscribe the term "without consent," which can occur in four discrete circumstances: where the victim (a) "is coerced by the immediate use or threatened use of force against a person or property"; (b) "is incapable of consent by reason of mental disorder, mental defect, drugs, alcohol, sleep[,] or any other similar impairment of cognition and such condition is known or should reasonably have been known to the defendant"; (c) "is intentionally deceived as to the nature of the act"; or (d) "is intentionally deceived to erroneously believe that the person is the victim's spouse." A.R.S. § 13-1401(A)(7). Thus, by definition, sexual assault necessarily involves the sexual violation of a person through force, coercion, or deception. As such, it is an inherently dangerous crime, and proof evident or presumption great that a defendant has committed the crime demonstrates that the defendant is dangerous.

¶42 As noted in *Simpson II*, the crime at issue there was *defined* to encompass both consensual and nonconsensual acts. 241 Ariz. at 349 ¶ 27. Here the crime is defined *only* to encompass nonconsensual sexual violations. The Court highlighted that distinction because the risk of future dangerousness encompasses not only the likelihood of recidivism but the inherent danger and human impact of the crime. The majority now "explain[s]" that the nature of the crime is irrelevant to the risk of future dangerousness. *Supra* ¶ 31. In that way, it removes from the constitutional equation that sexual assault is by definition a uniquely horrific act, in which a person's most intimate parts are violated through force, coercion, or deception.

17

¶43            As the United States Supreme Court recognized in *Coker v. Georgia*, sexual assault

> is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. *Short of homicide, it is the "ultimate violation of self."* It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. Rape is very often accompanied by physical injury to the female and can also inflict mental and psychological damage. Because it undermines the community's sense of security, there is public injury as well.

433 U.S. 584, 597–98 (1977) (emphasis added) (quoting Lisa Brodyaga et al., U.S. Dep't of Justice, *Rape and Its Victims: A Report for Citizens Health Facilities, and Criminal Justice Agencies* (1975)).

¶44            Unsurprisingly, then, the Supreme Court has recognized that sexual crimes justify distinctive legislative treatment in the confinement context.

¶45            In *Smith v. Doe*, 538 U.S. 84 (2003), the Court upheld a state's sex-offender registry against an Ex Post Facto Clause challenge. Although a distinct provision of the Constitution, the Ex Post Facto Clause is closely related to substantive due process because it likewise "forbids the application of any new punitive measure to a crime already consummated." *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997) (quoting *Lindsey v. Washington*, 301 U.S. 397, 401 (1937)). In *Smith*, the challengers argued the law was excessive in relation to its regulatory purpose because it "applies to all convicted sex offenders without regard to their future dangerousness," 538 U.S. at 103, which parallels Goodman's argument here. The Court held that the state reasonably "could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism." *Id.* Specifically, the Court cited findings justifying "grave concerns over the high rate of recidivism among convicted sex offenders and *their dangerousness as a class.*" *Id.* (emphasis added); *see also McKune v. Lile*, 536 U.S. 24, 32–33 (2002) ("Sex offenders are a serious threat in this Nation. . . . When convicted sex

offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. . . . [T]he rate of recidivism of untreated offenders has been estimated to be as high as 80%.").

¶46 The majority acknowledges that sex offenders constitute a serious threat but is unconvinced that recidivism statistics "inherently demonstrate that a person charged with sexual assault will likely commit another sexual assault if released pending trial." *Supra* ¶ 28. That conclusion misstates the constitutional requirement and implies the necessity of individualized assessments in every case, which we expressly rejected in *Simpson II*. 241 Ariz. at 348 ¶ 26 ("[W]e do not read *Salerno* or other decisions to require such individualized determinations in every case," but rather to require that its procedure serve as a convincing proxy for dangerousness.); *accord State v. Furgal*, 13 A.3d 272, 278–79 (N.H. 2010), *cited with approval in Simpson II*, 241 Ariz. at 349 ¶ 26. Rather, the Constitution requires only that the state reasonably could conclude that the risk of dangerousness requires pretrial confinement of those who are determined to have likely committed sexual assault. *See, e.g., Smith*, 538 U.S. at 103 ("The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences."); *see also id.* at 104 ("The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness," did not violate the clause.).

¶47 *Smith* and related cases establish that a state may categorically regulate sex offenders as a class for public safety purposes, both because of the uniquely horrific nature of the crimes and sex offenders' propensity for recidivism. Indeed, while the statute in *Smith* exposed *all* sex offenders to special burdens, the provision here deals only with a particularly heinous and dangerous subcategory of sex offenders. Nor does it amount to a substantial difference that *Smith* involved convicted sex offenders, given that the bail exclusion here applies only to defendants who are demonstrated at an adversarial hearing to have committed sexual assault by proof evident or presumption great. As we noted in *Simpson II*, the procedure to determine proof evident or presumption great is "robust," requiring a prompt and complete adversarial hearing with specific factual

findings in which "the state's burden 'is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding . . . [and] dispassionate judgment of the court that the accused committed'" the crime. 241 Ariz. at 346 ¶ 16 (alteration in original) (quoting *Simpson v. Owens*, 207 Ariz. 261, 274 ¶ 40 (App. 2004)).

**¶48** The majority notes that *Smith* distinguished the earlier opinion in *Hendricks*, *supra* ¶ 27, which upheld a statute requiring an individualized assessment of dangerousness for involuntary civil commitment for sexual offenders who were likely to recidivate due to mental abnormalities or personality disorders. *Hendricks*, 521 U.S. at 350–52. The scheme at issue differed from the prohibition of bail here in two crucial respects. First, it involved involuntary civil commitment after, and in addition to, the criminal sentence. *Id.* at 351–52. Further, the period of involuntary commitment was potentially indefinite. *Id.* at 364; *see also Foucha*, 504 U.S. at 83 (striking down "indefinite detention of insanity acquittees" in the absence of sufficient safeguards). As the Court observed in *Smith*, the "magnitude of the restraint made individual assessment appropriate." 538 U.S. at 104.

**¶49** In contrast to *Hendricks*, which exposed sex offenders to potentially indefinite involuntary commitment after having fully served their sentences, the bail prohibition here applies only to defendants who by proof evident and presumption great are likely to have committed sexual assault and whose pretrial confinement will be only temporary. It thus provides greater protection than the baseline requirement of a probable cause finding for pretrial confinement upheld by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Additionally, the Arizona Constitution, statutes, and rules guarantee a speedy trial. *See* Ariz. Const. art. 2, § 24 (guaranteeing the right of criminal defendants to speedy trial); A.R.S. § 13-114(1) (same); *see also* Ariz. Const. art 2, § 2.1(A)(10) (guaranteeing the right of crime victims to speedy trial); A.R.S. § 13-4435(A) (same); A.R.S. § 13-4435(D) (limiting continuances to "extraordinary circumstances" and when "indispensable to the interests of justice"). The Arizona Rules of Criminal Procedure prescribe time for trials, including 150 days after arraignment for defendants in custody. Ariz. R. Crim. P. 8.2(a)(1). Rule 8.6 provides that the court must dismiss any prosecution when it determines that the applicable time limits are violated. Those

protections ensure that defendants adjudged by proof evident or presumption great to have committed sexual assault will be subjected only to the pretrial detention necessary to protect the public against dangerous criminal acts.

¶50 For all of those reasons, we conclude that the bail-exclusion provision here fits comfortably within the *Salerno* framework. First, the provision applies to "a specific category of extremely limited offenses." *Salerno*, 481 U.S. at 750. Indeed, it is far more limited than the array of offenses for which bail was restricted in the law at issue in *Salerno*. *Id.* at 747 (citing 18 U.S.C. § 3142(f), which includes crimes of violence, offenses with a penalty of life imprisonment or death, serious drug offenses, and certain repeat offenders)). Second, it is narrowly focused on "preventing danger to the community," *id.* at 747, because it is limited to a crime that the Supreme Court has recognized as particularly dangerous and whose perpetrators are likely to commit similar crimes in the future, *see, e.g.*, *Smith*, 538 U.S. at 103–04; *supra* ¶¶ 45–47. Third, like the "full-blown adversary" hearing in *Salerno*, 481 U.S. at 750, pretrial detention in Arizona is preceded by a hearing requiring not merely probable cause but proof evident or presumption great. Although the Bail Reform Act at issue in *Salerno* included individualized assessments of dangerousness, *id.*, the nature of the crime here, as discussed above, justifies categorical treatment so that an adversarial hearing regarding probable guilt serves as an ample proxy for dangerousness. Fourth, the duration of pretrial detention is limited by speedy-trial guarantees and rules. *See id.* at 747. Finally, if any doubt exists that these safeguards "suffice to repel a facial challenge," the Court in *Salerno* admonishes that the protections sustained there are "more exacting" and "far exceed what we found necessary to effect limited pretrial detention" in other cases. *See id.* at 752.

¶51 *Simpson II* also suggests that the existence of less-restrictive alternatives may demonstrate the bail exclusion is not narrowly focused in some instances. 241 Ariz. at 349 ¶ 28. However, we emphasized that individualized determinations of dangerousness are unnecessary if the crime is a convincing proxy for unmanageable flight risk or dangerousness. *Id.* at 348–49 ¶ 26 (noting that historically, bail is often denied categorically to capital defendants due to flight risk). We expressly recognized that "certain crimes . . . may present such inherent risk of future dangerousness

21

that bail might appropriately be denied by proof evident or presumption great that the defendant committed the crime." *Id.* at 349 ¶ 26. As discussed above, the Supreme Court's decisions in *Smith* and *McKune* make clear that sexual assault is a uniquely grave and dangerous crime. The statutory definition limiting sexual assault to nonconsensual acts narrowly focuses the bail exclusion to an especially serious and inherently dangerous crime. The extensive safeguards further ensure narrow focus and satisfy the *Salerno* standards. Indeed, we held recently in *Morreno* that individualized dangerousness determinations are unnecessary to categorically deny bail to felony defendants who are arrested for *any* new felonies before trial. 790 Ariz. Adv. Rep. 24 ¶¶ 34–35. We therefore conclude that the majority unnecessarily oversteps by concluding that federal precedent compels it to invalidate a provision of our constitution.

**¶52** If it is presented the opportunity to do so, we urge the Supreme Court to review this decision. If we are correct that its precedents allow Arizona to deny pretrial release to those who by proof evident or presumption great have committed sexual assault, this Court has unnecessarily invalidated a part of our organic law. As a matter of comity and federalism, we urge the Supreme Court to correct the error if this Court has misread its precedents. In the meantime, with great respect to our colleagues, we dissent.

GOULD, J., joined by LOPEZ, J., dissenting.

¶53 For the reasons set forth in my partial dissent in *Morreno v. Hon. Brickner/State*, 790 Ariz. Adv. Rep. 24 ¶¶ 39–71, I also dissent from the majority's decision today. Specifically, I conclude the sexual assault bond restriction contained in article 2, section 22(A)(1), of the Arizona Constitution (and codified in A.R.S. § 13-3961(A)(2)) is facially constitutional. Additionally, while I do not join in Justice Bolick's dissenting opinion to the extent he applies the overbreadth analysis used in *Simpson II*, I do join in his analysis and conclusion that the bond provision at issue here is facially constitutional.

¶54 As it did in *Simpson II*, the majority abandons the facial standard set forth in *Salerno*, 481 U.S. at 745, substituting the overbreadth standard used by the Ninth Circuit in *Lopez-Valenzuela*, 770 F.3d 772. *See Morreno*, 790 Ariz. Adv. Rep. 24 ¶¶ 39–45 (discussing *Salerno's* standard for facial challenges and *Simpson II's* adoption of the overbreadth standard used in *Lopez-Valenzuela*). Thus, applying *Simpson II's* overbreadth standard, this Court strikes down yet another offense–based bond provision. Now, the only remaining offense–based restriction is for capital offenses. Undoubtedly, this provision cannot survive the majority's overbreadth test. *See Morreno*, 790 Ariz. Adv. Rep. 24 ¶¶ 64, 67–68, 70 (discussing how offense-based bond restrictions cannot survive the *Simpson II* overbreadth standard).

¶55 Here, like *Simpson II*, the majority contends that to be facially valid, sexual assault must serve as a "valid proxy" for future dangerousness and "inherently demonstrate[] that [an] accused will likely commit a new dangerous crime while awaiting trial." *See supra* ¶¶ 20, 35. Thus, if there are instances where a defendant charged with sexual assault might remain crime–free on pretrial release, the crime cannot serve as a "valid proxy" for future dangerousness.

¶56 Not only does the majority's approach create an impossible standard for "inherently dangerous" crimes, it essentially turns Salerno on its head. In contrast to the majority approach, Salerno provides that "[t]he fact that the [act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745. Thus, applying *Salerno*, the subject provision survives a facial

23

challenge because there are instances where a defendant who commits sexual assault poses a danger to the victim or the community. Indeed, as Justice Bolick notes in his dissent, the United States Supreme Court has expressly recognized that sex offenders are a "serious threat" to this "Nation," and that such offenders pose a risk of recidivism. *See supra* ¶¶ 44-46 (Bolick, J., dissenting). Admittedly, this does not mean that all sex offenders will reoffend, or that even most will reoffend. But any offender charged with sexual assault, when the proof of the offense is evident or the presumption great, inherently presents a risk of danger to society, and the pronouncements of the United States Supreme Court do show that at least some sex offenders almost certainly will commit new crimes while on pretrial release. Under *Salerno*, this is sufficient to survive a facial challenge. *Supra* ¶ 54.

**¶57**       In abandoning *Salerno*, the majority has effectively imposed a due process requirement that all determinations denying pretrial release must include an individualized determination of future dangerousness. There is, of course, no authority for this requirement. Indeed, *Salerno* did not impose such a requirement. *See Morreno*, 790 Ariz. Adv. Rep. 24 ¶¶ 59–62.

**¶58**       In response, the majority asserts that *Morreno* upheld a categorical bond restriction that did not provide an individualized determination. *Supra* ¶ 32. While true, *Morreno* addressed a bond restriction involving defendants who had already been charged with a felony and, while on pretrial release, committed another felony. Of course, preventing defendants from committing new crimes while on pretrial release is the very objective the voters sought to achieve in passing the subject bond provision, particularly when a defendant has been charged with a serious crime such as sexual assault. *Supra* ¶¶ 4, 16.

**¶59**       Applying the *Salerno* standard, I would deny Goodman's facial challenge. Following *Salerno* does not leave Goodman without a remedy. As I noted in *Morreno*, he can assert that the sexual assault provision is unconstitutional as applied to him. 790 Ariz. Adv. Rep. 24 ¶ 69. Therefore, I dissent.